IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK DAVID SWANN, #279-735          *
          Plaintiff,
       v.                              *   CIVIL ACTION NO. RDB-05-1465

JON P. GALLEY, *et al.*,            *
          Defendants.
                           ******

## MEMORANDUM OPINION

On May 21, 2005, Plaintiff Mark David Swann, then incarcerated at the Western Correctional Institution in Cumberland ("WCI"),[1] filed a civil rights action pursuant to 42 U.S.C. § 1983, as amended, seeking money damages against various correctional employees and officials. The case now is before the Court on the parties' various dispositive motions and oppositions thereto.[2] (Paper Nos. 22, 35, 42, 49 and 54). A hearing is not needed to resolve these dispositive motions and decide this case. *See* Local Rule 106.5 (D. Md. 2004).

## Plaintiff's Allegations

In his original Complaint, Plaintiff alleged that WCI Warden Jon P. Galley and WCI Officers Steven Shaffer and T. Skidmore retaliated against him for filing multiple Administrative Remedy Procedure ("ARP") claims by staging a February 9, 2004, cell search during which the officers planted a "shank" in Plaintiff's cell.[3] (Paper No. 1). Plaintiff later amended the Complaint to

---

[1]     Plaintiff currently is confined at the Maryland House of Correction at Jessup.

[2]     Although captioned alternatively as motions to dismiss or for summary judgment, the dispositive motions shall be construed as motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

[3]     Plaintiff states that his claim arises under the First Amendment, in the context of an attempt to deny him the right to petition the government for redress of grievances, and is not based on a denial of privacy rights. (Paper No. 54 at 1-2).

include as defendants Maryland Department of Public Safety and Correctional Services ("DPSCS") Secretary Mary Ann Saar and former Division of Correction ("DOC") Commissioner Frank Sizer claiming they failed to reprimand Galley, Shaffer and Skidmore for the allegedly retaliatory conduct after Saar and Sizer reviewed grievance records concerning same.  He further claimed that Maryland Parole Commission ("MPC") Defendants, Commissioners Amedori and Beckett, former Commissioner Woods, and Hearing Officer Ogle were guilty of retaliating against him for exercising his First Amendment rights by filing ARP actions, and violated his right to equal protection by treating him more harshly than similarly situated prisoners by considering his administrative filings in determining his eligibility for parole.[4]  (Paper No. 8).

On September 2, 2005, Plaintiff filed a second Motion for Leave to Amend Complaint, alleging that DOC Hearing Officer Al Davis denied him due process in a hearing on an infraction notice that resulted in Plaintiff receiving 365 days segregation.[5]  (Paper No. 12).  Thereafter, Plaintiff filed a Supplement to the Motion for Leave to Amend the Complaint, adding WCI Case Management Specialist Brent McKenzie for allegedly violating DOC regulations by increasing his security classification from minimum to medium security status based on Davis's disciplinary decision.[6] (Paper No. 12).  Additional claims for damages or injunctive relief were not included in the second Motion or the Supplement.  (*Id.*).

---

[4]       In addition to money damages against these Defendants, Plaintiff seeks injunctive relief whereby he would be afforded another parole hearing by an objective, unbiased party.

[5]       Specifically, Plaintiff alleges that Davis was biased, denied him the right to call witnesses, and failed to provide a legible written record of his decision.

[6]       Plaintiff's claims against McKenzie were the subject of another lawsuit.  On October 25, 2006, summary judgment was granted in McKenzie's favor and the action dismissed.  *See* Paper Nos. 26 and 27 in *Swann v. McKenzie*, Civil Action No. RDB-06-389 (D. Md. 2006).

On September 26, 2005, Plaintiff filed a Supplement to the second Motion for Leave to Amend seeking to add WCI Case Manager Brent McKenzie as a party-defendant, alleging that McKenzie violated DOC regulation and procedure by immediately raising Plaintiff's security classification from minimum to medium based on Hearing Officer Davis's disciplinary decision. (Paper No. 15).  Again, additional claims for damages or injunctive relief were not included in the Supplement.  (*Id*.).

### Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her

favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Furthermore, the non-moving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1260 (4th Cir. 1993); *PPM America, Inc. v. Marriott Corp.*, 875 F.Supp. 289, 296 (D. Md. 1995) (party cannot create an issue of fact for trial by building one inference upon another). In opposing summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts"[7] by establishing an evidentiary basis for the essential elements of his or her claims. *See Drewitt v. Pratt*, 999 F.2d 774, at 778. Using this standard of review, the Court now turns to the merits of each claim.

**Alleged Constitutional Violations Arising out of the February 9, 2004 Cell Search**

In the original and first amended complaint (Paper Nos. 1 and 8), Plaintiff alleges that WCI Officers Steven Shaffer and T. Skidmore staged a February 9, 2004, cell search in order to plant a weapon in his cell. He claims the misconduct occurred as retaliation for twelve previously-filed ARPs Plaintiff had initiated against other WCI officers concerning conditions of confinement and various improprieties. (Paper Nos. 1 at 4 and 8, Attachment at 1). Essentially, Plaintiff seeks money damages and contends that Shaffer and Skidmore intended to cause him harm for exercising his First

---

[7]   *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Amendment right to seek redress from government entities. He further contends that Warden Galley, MDPSCS Secretary Saar, and former DOC Commissioner Sizer also are liable for money damages because they failed to reprimand those under their supervision for such misconduct.

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how great a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Preliminarily, the Court notes that Plaintiff's allegation of retaliation was not brought forth at the disciplinary hearing convened two weeks after the incident. At the February 23, 2004, adjustment hearing, Plaintiff testified that his cell mate, who did not like whites, planted the weapon in Plaintiff's property in order to have Plaintiff removed from the cell. Plaintiff was found not guilty of possessing the weapon or of threatening an officer after the hearing officer found that Plaintiff might have been set up and the weapon might have been placed there by someone else. Paper No. 49, Exhibit 1 at 4-5. Warden Galley approved the hearing officer's decision. *Id.*, Exhibit 1 at 5.

Despite having been found not guilty of any adjustment infraction, Plaintiff filed an

unsuccessful ARP-WCI-0332-04, alleging that Officers Skidmore and Shaffer staged a cell search to retaliate against him for filing ARPs. Plaintiff appealed the denial of this latest ARP and, at a December 7, 2004, Inmate Grievance Office ("IGO") hearing before an Administrative Law Judge ("ALJ"), amended the complaint to allege that Skidmore and Shaffer planted the shank. (Paper No. 49, Exhibit 1 at 2). The ALJ found that Plaintiff failed to prove that Shaffer and Skidmore conducted an illegal cell search, planted evidence, and filed false reports[8] in retaliation for ARP complaints filed against WCI personnel, but ordered the DOC to remove records concerning the incident from Plaintiff's base file. (*Id.*, Exhibit 1 at 8). Given this chronology of events and a lack of supporting evidence subsequently produced during this litigation process, Plaintiff's claim that Skidmore and Shaffer planted a shank as retaliation appears to be based on "mere speculation or the building of one inference upon another," and not likely to withstand summary judgment.

Other deficiencies in Plaintiff's case abound. The Court concurs with Defendants' assertion that prisoners have no legitimate expectation of privacy in their cells and no Fourth Amendment protection with regard to contraband seized from those cells during routine searches.[9] Even if the Court accepts Plaintiff's contention that the cell search was not premised on an informant's "tip,"[10] liability could be imposed only if the Court also concluded that (1) a prisoner's filing of ARPs is a

---

[8]       The allegation of false reports appears to stem from inconsistencies in the testimony between the two officers with regard to who ordered the cell search and whether the search was predicated on an informant's information. (Paper No. 49., Exhibit 1 at 7).

[9]       *See Hudson v. Palmer*, 468 U.S. 517 (1984).

[10]       Plaintiff points to discrepancies in the testimony of Officer Shaffer and Unit Manager Lt. Riggleman at the December 7, 2004, hearing before Administrative Law Judge Douglas E. Koteen. (Paper No. 54, Exhibit A-1). The Court agrees that corrections officials testifying at the hearing provided no specific reason for the search and further differed as to who called for the search and why. The Court, however, disagrees with Plaintiff's premise that a cell search – even one allegedly designed to harass a prisoner – necessarily violates the Constitution.

constitutionally protected right to seek redress under the First Amendment, (2) the cell search was undertaken solely as a retaliatory act in response to the exercise of that right or the search itself violated such a right (e.g., evidence was in fact "planted)," and (3) Plaintiff's First Amendment rights were chilled or he was otherwise injured as a result of the act.

The Prison Litigation Reform Act ["PLRA"], 42 U.S.C. § 1997e, generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court.  Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Thus, in addition to providing a mechanism by which prisoners can seek redress within the institution, Maryland's ARP process is the first step for those prisoners seeking redress within the court system.[11]  Exhaustion of administrative remedies is, however, not a jurisdictional requirement for filing a lawsuit and need not be alleged by a prisoner in his complaint.  *See Woodford*, 2006 WL 1698937 * 11 ("the PLRA exhaustion requirement is not jurisdictional"); *see also Anderson v. XYZ Correctional Health Systems*, 407 F. 3d 674, 677 (4th Cir. 2005). [12]   Plaintiff does not claim that his

---

[11]     The purpose of the exhaustion requirement of the PLRA is to provide "time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Porter v. Nussle*, 534 U.S.  516, 525 (2002); *see also Woodford v. Ngo*, __ U.S. __, 2006 WL 1698937 (June 22, 2006) ( administrative remedies must be properly exhausted and exhaustion is mandatory).

[12]     The PLRA "clearly contemplates dismissal on the merits of some claims that have not been exhausted . . . [accordingly], the exhaustion-of-remedies requirement does not operate as a bar to the district court's exercise of its subject-matter jurisdiction." *Woodford, citing* 42 U.S.C. § 1997e(c)(2).   Accordingly, it is not necessary for a Plaintiff to allege exhaustion in a complaint in order to state a claim.  Instead, it generally is an affirmative defense to be raised by the defendant. *See Anderson*, 407 F.3d at 681.

access to the courts has been chilled or in any way affected by Defendants' alleged actions.[13] Instead,

he focuses on use of the ARP process as a mechanism for seeking redress from prison officials. This

Circuit, however, does not recognize a constitutional right to seek such redress by way of a prisoner

grievance procedure. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Thus, to the extent that

Plaintiff might prevail on his claim that a shank was planted during the cell search, he cannot

establish that such activity was undertaken in retaliation for his exercising his First Amendment

rights or that the activity resulted in the violation of such rights.

Plaintiff's claim that Defendants Galley, Saar, and Sizer impermissibly failed to reprimand

Shaffer and Skidmore also fails. Such supervisory officials cannot be held liable under the civil

rights statute unless they are directly responsible for constitutional wrongdoing. Thus, claims

brought against such officials pursuant to 42 U.S.C. § 1983 cannot be sustained under a theory of

*respondeat superior. See Monell v. New York Dep't of Social Services*, 436 U.S. 658, 691 (1978).

Plaintiff has presented at most unsubstantiated allegations that Shaffer and Skidmore "had a record"

of violating prisoners' constitutional rights. While the supervisory defendants might be liable if they

had direct knowledge that these officers were "rogues" who deliberately set out to harm prisoners

under their watch, no evidence points to this conclusion. Accordingly, Defendants Saar, Galley and

Sizemore are entitled to summary judgment.

### Alleged Constitutional Violations Concerning the Adjustment Conviction

In his second Amended Complaint, Plaintiff alleges that Hearing Officer Al Davis denied

him due process at an August 22, 2005, adjustment hearing at which Plaintiff was found guilty of

---

[13]     Indeed, since February 9, 2004, Plaintiff has filed four lawsuits in this Court, including the instant action.

testing positive for opiates and subjected to 365 days on segregation.  Plaintiff claims Davis' written decision was largely indecipherable and that his requested witnesses were denied an opportunity to testify on his behalf.  He also complains that the penalty imposed by Davis was excessive and "retaliatory," given his then-status as a minimum security prisoner with only one prior adjustment conviction  and the fact that the institutional representative recommended 200 days.

In order to be entitled to the protections of the Due Process Clause, a person must have a constitutionally protected life, liberty or property interest at stake.  Arguably, prisoners have a liberty interest in actions that result in the loss of good time credits or otherwise lengthen the amount of time they must serve.  *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).   With regard to prison administration and disciplinary proceedings, however, due process rights are limited to those situations in which mandatory language in state laws or regulations creates enforceable expectations.  *See Meachum v. Fano*, 427 U.S. 215, 228 (1976). Additionally, the adverse action affecting the prisoner must subject him or her to a sanction that "imposes atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Under *Wolff v. McDonnell*, 418 U.S. 539 (1974), Plaintiff is entitled to certain procedural due process protections, including the right to written notice of the charges in advance of a hearing, written findings of fact, the right to call witnesses if doing so does not interfere with institutional safety, and the right to a decision by an impartial tribunal. Here, Plaintiff does not claim that he was unaware of the charges against him, but instead complains that the written decision was illegible. The Court agrees that it is hard to decipher every word; however, Defendant Davis indicates that he had to rely on handwriting due to computer failure, and that had he been asked to provide a typed

or more legible copy of the decision, he would have done so.[14] ( Paper No. 49, Exhibit 1 at 14-17, 26-27, 34-35 and Exhibit 6).   Furthermore, Davis denied Plaintiff the opportunity to call various witnesses to testify as to his aversion to drug use because he determined their testimony would be "off point or not relevant...[and having] nothing directly to do w[ith]" the notice of infraction.[15]   (*Id.*, Exhibit 1 at 27).

It is well established that prisoners have a strong interest in ensuring that a loss of good behavior credits is not arbitrarily imposed by a disciplinary board. *See Superintendent, Massachusetts Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).   Under *Hill*, a hearing officer's decision should not be overturned if his disciplinary determination is supported by "some evidence." *See Hill*, 472 U.S. at 455; *see also Baker v. Lyles*, 904 F.2d 925, 931 (4th Cir. 1990).   The *Hill* standard does not require an examination of the entire record, independent assessment of the credibility of the witness, or the weighing of evidence.   The relevant question is whether there is "some evidence" in the record which could support the conclusion reached by the hearing officer. *Id.* at 455.   Plaintiff's substantive due process rights were met in that the disciplinary hearing decision was unquestionably based upon "some evidence" submitted before the hearing officer.   The unsubstantiated, bald allegation that the outcome of the adjustment hearing was based on retaliation is not supported by mere conjecture. *See Adams v. Rice,* 40 F.3d at 74.   Defendant Davis is entitled to summary judgment based on the allegations raised herein.

---

[14]     Despite the poor penmanship reflected in the decision, Plaintiff was able to draft a detailed appeal to the Warden.  (Paper No. 49, Exhibit 1 at 29-33).

[15]     Plaintiff requested the presence of several dispensary nurses and eight correctional officers.  He proffered that the nurses would testify that they dispensed hundreds of drugs daily and Plaintiff on one occasion returned a blister pack of medication to them because it had been improperly dispensed to him.  The officers would have testified that they interacted with him daily and never found him to be under the influence of drugs. (Paper No. 49, Exhibit 1 at 30).

**Alleged Constitutional Violations Concerning Parole Decisions**

Plaintiff next complains that Maryland Parole Commissioners Amedori and Beckett,

former Commissioner Woods, and Hearing Officer Ogle retaliated against him for exercising his

First Amendment rights by filing ARP actions, and violated his right to equal protection by treating

him more harshly than similarly situated prisoners by considering his administrative filings in

determining his eligibility for parole.  He bases his belief that information concerning his ARP

activities was known to the Parole Commission on the fact that WCI Institutional Coordinator

Jeffrey Nines acted as the institutional representative designated to attend Plaintiff's parole hearings.

While admitting there is no record evidence that Nines provided the Commission with evidence of

ARP filings, Plaintiff contends that Nines may have orally informed the Commission of same. [16]

The evidence of record proves otherwise.  Parole Commission Chairman David Blumberg

provided information concerning Plaintiff's various convictions and sentences that clearly indicates

that Plaintiff received parole consideration prior to having served one-fourth of his sentences.  (Paper

No. 42, Exhibit 6 at 2-3 and Attachments thereto).  Blumberg's affidavit further states that Plaintiff's

parole file contains no reference to ARP requests or grievances he may have filed against the DOC.

*(Id.*, Exhibit 6 at 4).  Plaintiff is not entitled to money damages against the Commissioners on this

claim.

Furthermore, Plaintiff's request for injunctive relief mandating he be provided a new parole

hearing cannot be granted.  This Circuit has previously determined that a Maryland inmate has no

---

[16]     Plaintiff points to a statement allegedly made by Hearing Officer Davis to Nines, who attended
Plaintiff's August 22, 2005, adjustment hearing, asking whether Plaintiff was "the one writing ARPs."  (Paper No.
54 at 6).  A statement made within the walls of WCI to an adjustment hearing officer does not demonstrate that a
similar statement was made to members of the Parole Commission during an entirely separate, unrelated proceeding.

colorable liberty interest in parole release.  *See Bryant v. Maryland*, 848 F.2d 492 (4th Cir. 1988);

*Paoli v. Lally*, 812 F.2d 1489 (4th Cir.1987).  Consequently, the alleged failure to grant Plaintiff

parole after he has served a certain percentage of his sentence does not implicate a viable due process

right. While Plaintiff now complains that the Commission has miscalculated his aggregate length

of sentences (Paper No. 54 at 8-10), he has never challenged the Commission's decision to rehear

him for parole in June of 2007.  (Paper No. 42, Exhibit 6 at 4).  His request for injunctive relief is

a thinly-veiled, unexhausted request for habeas corpus relief unavailable to him in this forum, and

will be denied.

### Alleged Constitutional Violations Regarding Reclassification Following the August, 2005, Adjustment Conviction

The propriety of reclassification following Plaintiff's August 22, 2005, adjustment conviction

has been fully and finally litigated in *Swann v. McKenzie*, Civil Action No. RDB-06-389 (D. Md.).

The matter currently is on appeal.  The issues will not be re-examined here.

For reasons set forth herein, Defendants are entitled to summary judgment in this case.  A

separate Order shall be entered in accordance with this Memorandum Opinion.

December 7, 2006                          /s/   *Rch D. Bennett*
(Date)                                              RICHARD D. BENNETT
                                                    UNITED STATES DISTRICT JUDGE